UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 1:21-CR-046-01-H |
| | § | |
| RUBEN LEE TREVINO, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION ON REFERRED MATTERS**

Defendant Ruben Lee Trevino informed the Court at his sentencing hearing on February 22, 2022, that he wanted to withdraw his guilty plea and have his court-appointed counsel replaced with new court-appointed counsel. Dkt. No. 35. The Court instructed Trevino's counsel, Jacob Blizzard, to file a response to Trevino's requests, and Blizzard has done so through his Counsel for Defendant's Ex Parte Response Regarding Defendant's Expressed Intent to Withdraw His Plea and Request for New Counsel. Dkt. No. 36. The Honorable United States District Judge James Wesley Hendrix referred these issues to the undersigned to conduct a hearing and issue a report and recommendation. Dkt. No. 37. Trevino then filed a handwritten document, docketed as a Response. Dkt. No. 39. A hearing was held on March 24, 2022, and the undersigned now issues this Report and Recommendation.

## I. BACKGROUND

A grand jury returned an indictment on July 14, 2021, charging Trevino in four counts with Possession with Intent to Distribute 50 Grams or More of Methamphetamine

(Actual) in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii) (Counts One and Four), Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c) (Count Two), and Convicted Felon in Possession of a Firearm and Ammunition in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). Dkt. No. 3.

Trevino made his initial appearance in federal court on July 27, 2021 (Dkt. No. 10) and asked the Court to appoint counsel for him. After finding that Trevino qualified under the CJA, the undersigned appointed Blizzard to represent Trevino.

Trevino later entered into a plea agreement with the Government and pleaded guilty before the undersigned to Count Four of the Indictment charging him with Possession with Intent to Distribute 50 Grams or More of Methamphetamine (Actual) in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii). Dkt. No. 20. The undersigned entered a Report and Recommendation recommending that Judge Hendrix accept Trevino's guilty plea. Dkt. No. 26. After no objections to the Report and Recommendation were filed, Judge Hendrix accepted Trevino's plea and adjudged him guilty on December 2, 2021. Dkt. No. 27.

Judge Hendrix entered a Scheduling Order for Sentencing which set Trevino's sentencing hearing for February 10, 2022, and set a deadline of January 13, 2022, for filing objections to the Presentence Investigation Report. Dkt. No. 28. Sentencing was later reset for February 22, 2022. Dkt. No. 33. When Trevino's case was called for sentencing that day, Trevino first expressed his desire to withdraw his guilty plea and have new court-appointed counsel. Dkt. No. 35.

## II.  CLOSURE OF MARCH 24 HEARING

Upon referral of these matters from Judge Hendrix, the undersigned set the March 24 hearing. Dkt. No. 38. Having determined prior to the hearing that Trevino's request to withdraw his guilty plea was intertwined with his request for a new lawyer, the undersigned informed the parties at the beginning of the hearing of the need to delve into communications between Trevino and his attorney. On this basis, the undersigned further informed the parties that a portion of the hearing would be conducted ex parte and in camera after providing the Government an opportunity to address the seven-factor *Carr* test used by the Fifth Circuit in determining whether a defendant has shown a fair and just reason for withdrawing his plea. *See United States v. Carr,* 740 F.2d 339, 343-44 (5th Cir. 1984).[1] Additionally, the undersigned explained that the Government would be allowed to address any other matter related to Trevino's request to withdraw his plea, either before the ex parte portion of the hearing or through a written response filed after the hearing. The Government's attorney advised the Court that she would file a written response that same day, which she did. *See* Dkt. No. 41.

The Sixth Amendment's guarantee of a public trial extends to pre-trial hearings such as the one on March 24. *United States v. Hitt*, 473 F.3d 146, 154 (5th Cir. 2006) (citing *Waller v Georgia*, 467 U.S. 39, 47 (1984). But Trevino's attorney, on Trevino's behalf,

---

[1] As will be explained more fully below, the *Carr* factors are whether: (1) the defendant asserted his innocence; (2) withdrawal would cause the government to suffer prejudice; (3) the defendant delayed in filing the motion; (4) withdrawal would substantially inconvenience the court; (5) close assistance of counsel was available; (6) the original plea was knowing and voluntary; and (7) withdrawal would waste judicial resources. *Carr*, 740 F.2d at 343-44.

agreed at the beginning of the hearing that conducting a portion of the hearing ex parte would be in Trevino's best interest. And Trevino stated on his own behalf that he had no objection to conducting a portion of the hearing ex parte, provided that his wife was allowed to remain, and she was.

The Government objected to the undersigned conducting part of the hearing ex parte, citing the Department of Justice policy regarding open judicial proceedings. *See* 28 C.F.R. § 50.9. The DOJ policy, however, condones the closure of judicial proceedings in certain circumstances, the most relevant here being when: (a) no reasonable alternative exists for protecting the interests at stake, (b) closure is clearly likely to prevent the harm sought to be avoided, (c) the degree of closure is minimized to the greatest extent possible, and (d) failure to close the proceedings will produce a substantial likelihood of denial of the right of any person to a fair trial. *Id*. at 50.09(c)(1)-(3), (6)(i).

In the context of preserving privileged communications between a defendant in a criminal proceeding and his attorney, and preserving that defendant's right to a fair trial, the undersigned finds that each of the above DOJ policy factors not only weigh in favor of conducting part of Trevino's hearing ex parte—after affording the Government an opportunity to be heard—but arguably would support the Government filing a motion for ex parte hearing to ensure that Trevino's rights are protected. This latter conclusion is supported by the overarching goal of the DOJ policy to "protect the societal interest in open proceedings" by ensuring that a DOJ attorney "should move for or consent to closed proceedings only when closure is *plainly essential to the interests of justice*" *Id*. (emphasis added). Society has no legitimate interest in the privileged communications between a

criminal defendant and his attorney, other than ensuring that those communications remain confidential to the greatest extent permitted by law.[2]

For these reasons, after permitting the Government's attorney to be heard on the matters under consideration, the undersigned conducted a portion of the hearing ex parte and in camera with only Trevino, his wife, Blizzard, U.S. Marshal's Service personnel, a U.S. Probation Officer, and other Court personnel present. And for the same reasons, the undersigned RECOMMENDS that the transcript of the March 24 hearing remain sealed until further order of the Court.

## III.  DISCUSSION AND ANALYSIS

a.  <u>Withdrawal of guilty plea</u>

On March 22, 2022, one month after Trevino's aborted sentencing hearing, Trevino filed his Response in which he sets out his claim that his guilty plea was "unintelligent and involuntary." Dkt. No. 39. Trevino claims that he does "not feel comfortable at all pleading guilty for multiple reasons mainly stemming from asserting my actual innocence and ineffective counsel issues." *Id*. at 1. He continues that "[t]he only reason I did plead guilty was because my attorney secured what I believed to be a fair plea at the time, absent my understanding of relevant conduct, which rendered my plea unintelligent and involuntary." *Id*. Trevino claims that his attorney "had me under the impression that me pleading guilty to Count 4, Counts 1-3 would be dismissed and over with." *Id*. According to Trevino,

---

[2] The purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby *promote broader public interests in the observance of law and administration of justice*." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (emphasis added).

Blizzard "never explained relevant conduct or its application in reference to dismissed counts" and, Trevino claims, that he "never would have plead guilty had I known that relevant conduct would be applied to me." *Id*. Trevino claims that he did not realize that relevant conduct would be considered in connection with his sentencing on Count Four until January 26, 2022, past the deadline to file objections to the PSR. *Id*.

Trevino claims that he and Blizzard "never got to go over the entire content of my PSR." *Id*. He goes on to list a variety of issues he had with Blizzard before concluding his Response by stating that he does not seek to withdraw his plea for purposes of unnecessary delay, but rather "[i]t's about the waiving of my rights without being properly apprised of the collateral consequences" and "the lack of information and being mislead about certain information." *Id*. at 1-2.

A defendant may withdraw a guilty plea after the Court accepts the plea but before sentencing if, relevant here, "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). "In determining whether a defendant has shown a fair and just reason, the Fifth Circuit applies the seven-factor test set forth in *United States v. Carr*." *United States v. Harrison*, 777 F.3d 227, 234 (5th Cir. 2015) (citing *Carr*, 740 F.2d at 343-44). Those factors are whether: (1) the defendant asserted his innocence; (2) withdrawal would cause the government to suffer prejudice; (3) the defendant delayed in filing the motion; (4) withdrawal would substantially inconvenience the court; (5) close assistance of counsel was available; (6) the original plea was knowing and voluntary; and (7) withdrawal would waste judicial resources. *Carr*, 740 F.2d at 343-44. Courts are not required to make a finding on each factor, but rather should base the

decision on the "totality of the circumstances." *United States v. Hughes*, 726 F.3d 656, 662 (5th Cir.).

The burden of establish a fair and just reason "rests with the defendant." *United States v. Brewster*, 137 F.3d 853, 858 (5th Cir. 1998). But when a defendant acknowledges at his guilty plea hearing that "his plea was freely and voluntarily made, and that he understood the nature of the charges against him and the nature of the constitutional rights he was waiving," a presumption arises that the plea is valid. *Matthew v. Johnson*, 201 F.3d 353, 366 (5th Cir. 2000) (citing *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) (holding that "the representations of the defendant, his lawyer, and the prosecutor at [the plea hearing] as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.").

Trevino pleaded guilty before the undersigned on November 4, 2021. Dkt. No. 24. At the beginning of his rearraignment hearing, Trevino was placed under oath after the undersigned first admonished him that any false information provided while under oath could subject him to prosecution for perjury or making a false statement. Trevino acknowledged his understanding of the importance of the oath.

After establishing Trevino's competence to plead guilty, the undesigned examined Trevino concerning the subjects in Rule 11(b)(1) and determined that he understood each subject. Specifically, Trevino was advised of his right (1) to refuse to plead guilty and demand a trial by jury on the charges against him, (2) to the assistance of counsel throughout these criminal proceedings, (3) to confront and cross-examine witnesses, (4) to be protected from compelled self-incrimination, (5) to testify himself if he chose to do so,

(6) to present evidence, and (7) to compel the testimony of witnesses and the production of evidence that is in his favor. Trevino expressed his understanding of these rights and his further understanding that by pleading guilty he would be waiving these rights and consenting to Judge Hendrix adjudging him guilty based solely on his plea. He also expressed his belief that pleading guilty was in his best interest notwithstanding that he would have to waive these rights to do so.

The undersigned then explained to Trevino that the essential elements of the offense to which he was pleading—Count Four—were the facts the Government was required to prove beyond a reasonable doubt at trial to secure his conviction on that count. Following this explanation, the undersigned asked the Government's attorney to read to Trevino the four essential elements of Count Four, after which Trevino testified that he understood each essential element and admitted that he had committed each element.

The undersigned next examined Trevino on the Factual Resume, asking him whether, prior to signing the Factual Resume, he had read it carefully and discussed it thoroughly with Blizzard. Trevino replied, "Yes sir, I did." He also admitted that all the facts contained in the Factual Resume were true and correct.

The undersigned next asked the Government's attorney to state the maximum penalties for a person convicted of the charge in Count Four, which includes a term of imprisonment of not less than 10 years or more than life, a fine not to exceed $10 million or both, a term of supervised release of not less than five years and up to life, and a $100 mandatory special assessment. Trevino also agreed to the forfeiture of a Glock Model 19, 9mm handgun. Trevino testified that he understood the penalties for the charge to which

he was pleading guilty and that he further understood that if Judge Hendrix accepted his plea, that he would be subject to those penalties up to the maximum amount of life in prison.

The undersigned next examined Trevino on the Plea Agreement, and Trevino testified that, prior to signing the Plea Agreement, he read it carefully, discussed it thoroughly with Blizzard, and fully understood each paragraph of the Plea Agreement. The undersigned specifically asked Trevino whether he discussed each paragraph of the Plea Agreement with Blizzard and received from Blizzard a satisfactory explanation regarding how each paragraph may affect his rights. In response, Trevino testified, "Yes, sir, we've already talked about everything."

The undersigned examined Trevino on the United States Sentencing Guidelines, explaining that while the sentencing judge is required to consider the Guidelines, he is not bound by them. The undersigned further explained that in addition to the Guidelines, the sentencing judge would consider any authorized departures or variances from the Guidelines, as well as a list of statutory sentencing factors. The undersigned asked Trevino whether he had discussed with Blizzard how the Guidelines, any authorized departures or variances from the Guidelines, and the statutory sentencing factors might affect his sentence. Trevino testified, "Yes, sir, I have." But the undersigned also cautioned Trevino that no one, including Blizzard, can predict with any certainty what his ultimate sentence may be. And that so long as his sentence was within the statutory range of punishment of between 10 years to life, even if the sentence is higher than Trevino expected it to be, that he will not be allowed to withdraw his plea. Trevino again expressed his understanding

that his sentence could fall anywhere within the statutory range of punishment and, if so, that he would not be allowed to withdraw his plea.

In addition to the above colloquy, Trevino's Plea Agreement—which he signed and testified to discussing thoroughly with Blizzard and understanding—explains in paragraph 5 the Court's discretion and the role of the Guidelines:

> Court's sentencing discretion and role of the Guidelines: The defendant understands that the sentence in this case will be imposed by the Court after consideration of the United States Sentencing Guidelines. The guidelines are not binding on the Court, but are advisory only. The defendant has reviewed the guidelines with the defendant's attorney, but understands no one can predict with certainty the outcome of the Court's consideration of the guidelines in this case. The defendant will not be allowed to withdraw the defendant's plea if the defendant's sentence is higher than expected. The defendant fully understands that the actual sentence imposed (so long as it is within the statutory maximum) is solely in the discretion of the Court.

Dkt. No. 20 at 3.

Trevino also expressed his understanding of the Government's agreement to not bring any additional charges based on the conduct Trevino was admitting, and to dismiss after sentencing the remaining counts in the Indictment.

Before accepting Trevino's plea, the undersigned asked him whether he had any questions about his Plea Agreement, and Trevino said that he did not.

After examining Trevino concerning his rights, the details of the charge, the specifics of the punishment range, the accuracy and his understanding of the Factual Resume, and his understanding of the Plea Agreement, the undersigned also asked Trevino if he wanted an opportunity to visit privately with Blizzard before entering his plea. Trevino

responded, "I'm ready to plead, sir." And when asked whether he was fully satisfied with

Blizzard's representation of him in this case, Trevino testified, "Yes, sir, I am."

Trevino's rearraignment testimony above is also consistent with paragraph 13 of his

Plea Agreement, where he agreed:

> Representation of counsel: The defendant has thoroughly reviewed all legal and factual aspects of this case with the defendant's attorney and is fully satisfied with that attorney's legal representation. The defendant has received from the defendant's attorney explanations satisfactory to the defendant concerning each paragraph of this plea agreement, each of the defendant' s rights affected by this agreement, and the alternatives available to the defendant other than entering into this agreement. Because the defendant concedes that the defendant is guilty, and after conferring with the defendant's attorney, the defendant has concluded that it is in the defendant' s best interest to enter into this plea agreement and all its terms , rather than to proceed to trial in this case.

Dkt. No. 20 at 6-7. Similarly, immediately above Trevino's signature on the Plea

Agreement is Trevino's representation that, "I have read (or had read to me) this Plea

Agreement and have carefully reviewed every part of it with my attorney. I fully understand

it and voluntarily agree to it." *Id*.

Before accepting Trevino's plea, and after admonishing him that his plea must be

purely voluntary, the undersigned asked Trevino whether anyone had made any promises

to him in exchange for his plea other than the promises made by the Government in the

Plea Agreement. Trevino testified, "No, sir." In response to the undersigned asking Trevino

whether anyone had threatened him or otherwise tried to force him to plead guilty, Trevino

laughed and replied, "No, sir." When asked if he was pleading guilty because he was in

fact guilty and for no other reason, and of his own free will, Trevino testified, "Yes, sir."

Trevino's rearraignment testimony is again consistent with the plea agreement which he signed and testified to having thoroughly discussed with Blizzard and understood. Specifically, paragraph 11 of the Plea Agreement provides:

> Voluntary plea: This plea of guilty is freely and voluntarily made and is not the result of force or threats, or of promises apart from those set forth in this plea agreement. There have been no guarantees or promises from anyone as to what sentence the Court will impose.

Dkt. No. 20 at 6.

After receiving Trevino's plea of guilty, but before making any findings on the record, the undersigned again asked Trevino if he had any question about anything that occurred during his rearraignment. He said that he did not. At no time during his rearraignment did Trevino appear uncertain or hesitant about his decision to plead guilty or ask to speak to Blizzard even though the undersigned offered him opportunities to do so.

The undersigned next applies the *Carr* factors in determining whether Trevino has shown a fair and just reason for the withdrawal of his plea.

1. The First *Carr* factor

The first *Carr* factor is whether the defendant has asserted his innocence. Here, importantly, Trevino does not now claim to be factually innocent of the charge to which he pleaded guilty. During the March 22 hearing, Trevino clarified the claim of actual innocence reflected in his written Response. Trevino admitted on March 24, again under oath, that the Factual Resume is substantially correct. While initially claiming during the hearing that the Factual Resume was no longer true and correct, he clarified that what he

means by this is that he was under the false impression that the officers who searched his
vehicle on April 28, 2019, had a warrant for his arrest, which he claims they told him at
the time. In other words, Trevino now claims that he has a non-frivolous suppression claim
related to the 312.5 grams of methamphetamine found in his vehicle, but he does not claim
to be factually innocent of the charge to which he pleaded guilty.

The Factual Resume previously signed by Trevino, and to which he testified during
his rearraignment was true and correct, details in relevant part that:

> On April 28, 2021, narcotics investigators saw Trevino driving a grey
> Chevrolet Tahoe. Based on previous encounters, they knew Trevino did not
> have a valid Texas driver's license so a traffic stop of Trevino was conducted
> for driving with an invalid license.
>
> During the traffic stop, a narcotics detention canine conducted an open-air
> sniff of Trevino's vehicle and alerted to the odor of a controlled substance
> emitting from the vehicle. During the subsequent probable cause search of
> Trevino's vehicle, a plastic container holding numerous small baggies and a
> trace amount of methamphetamine was located in the center cup holder of
> the vehicle. Additionally, a black safe was located on the driver's side
> floorboard. The key to the safe was in Trevino's hand. The odor of marijuana
> could be smelled through small holes in the safe. Agents obtained a search
> warrant for the safe. Inside the safe investigators found five plastic baggies
> contained a crystal-like substance that field-tested positive for the presence
> of methamphetamine. Trevino's wallet and identification were also found in
> the safe.
>
> The methamphetamine was submitted to the Drug Enforcement
> Administration Laboratory, which confirmed that the substance possessed by
> Trevino was methamphetamine (actual) with a net weight of 312.5 grams.
> This is an amount only consistent with distribution and not personal use.

Dkt. No. 22 at 2.

The undersigned carefully examined Trevino during the March 24 hearing about the
particular respects in which he now claims the Factual Resume is incorrect. Trevino now

testifies that he: (1) denies the investigators saw him driving a grey Chevrolet Tahoe, although he admits to owning the Tahoe and sitting in the driver's seat while it was parked at a convenience store and when the officers approached it[3], (2) denies that there was a "traffic stop" on the basis that his vehicle was not moving when the officers approached it, (3) denies that the officers found a plastic container holding numerous small baggies and a trace account of methamphetamine in the center cup holder of the Tahoe, but admits they were found elsewhere inside the vehicle, (4) denies the officers found the black safe on the driver's side floorboard, but admits it was found in the second or third row on the driver's side, and (5) denies the key to the safe was found in his hand, but admits it was around his neck. Otherwise, Trevino continues to admit under oath to the accuracy of the facts in the Factual Resume set out above.

The undersigned FINDS that the facts Trevino continues to maintain under oath are accurate satisfy each essential element of Count Four to which Trevino pleaded guilty.

At best, Trevino pins his hopes on the possible suppression of the 312.5 grams of methamphetamine found in his vehicle on April 28, 2021. His argument in this connection is that the officers who approached his vehicle that day told him that they had a warrant for his arrest. Trevino testified at the March 24 hearing that when he asked the officers for the basis of the warrant, they told him that they were not required to explain that to him. But Trevino also testified at the March 24 hearing that within two minutes of the officers arriving at his vehicle, a canine unit arrived, and the canine performed the open-air sniff

---

[3] Trevino claims that another person drove him in Trevino's Tahoe to the store and when the driver went into the store, Trevino moved into the driver's seat, although he denies operating the Tahoe at any time that day.

referenced in the Factual Resume. Trevino does not deny that the canine alerted to his vehicle immediately prior to the officer's search of his vehicle.

The undersigned has now examined Trevino twice under oath—at his rearraignment and at the March 24 hearing—and finds no material differences in his testimony as it relates to the factual basis for his plea. Both instances of testimony factually support his plea. And the "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge*, 431 U.S. at 74.

For these reasons, the undersigned FINDS that the first *Carr* factor weighs against allowing Trevino to withdraw his plea.

2. The second, fourth, and seventh *Carr* factors

The second *Carr* factor assesses the prejudice to the Government if the defendant were allowed to withdraw his plea. This factor intertwines with the fourth factor—whether the withdrawal would substantially inconvenience the court—and the seventh factor—whether the withdrawal would waste judicial resources. *See U.S. v. Moya*, 730 F. Supp. 35, 42 (N.D. Tex. 1990).

As explained above, the undersigned provided the Government an opportunity at the March 24 hearing to address Trevino's request to withdraw his plea, either before the ex parte portion of the hearing or through a written response filed after the hearing. The Government filed a written response that same day, March 24. *See* Dkt. No. 41.

Through its response, the Government argues that the second, fourth, and seventh factors weigh against allowing Trevino to withdraw his plea because:

Were the Court to allow the defendant to withdraw his guilty plea, the government would proceed to trial on all four counts of the indictment. The Government would have to prepare for and go to trial, which would likely last several days, since this indictment involves two separate dates.

. . .

[A] trial in this case would likely last several days. The Court can consider whether a previously unneeded trial in this matter would be disruptive to its schedule.

. . .

[T]he Court would need to assemble a jury panel and clear its calendar for at least three days (one day for a suppression hearing and two days for trial). These are resources that the Court, but for the defendant withdrawing his plea, could otherwise dedicate to other matters. Allowing Trevino to withdraw his plea would likely waste, at a minimum, "some" judicial resources.

Dkt. No. 41 at 5-7, 9.

Trevino's case was originally set for trial for September 13, 2021. Dkt. No. 15 at 1. The Government's discovery deadline was August 6, 2021, and Trevino's discovery deadline was August 16, 2021. *Id*. Trevino later filed an unopposed Motion for Extension of Time to File Pretrial Motion, Dkt. No. 16, seeking an additional fourteen (14) days to file pretrial motions, and that motion was granted. Dkt. No. 17. Trevino next filed an Unopposed Motion for Continuance of Trial and Pre-Trial Motions Deadline, citing conflicts in his attorney's schedule. Dkt. No. 18. That motion, too, was granted and Trevino's trial was reset for December 6, 2021, and the deadline for pretrial motions and defendant's discovery was extended to November 8, 2021. Dkt. No. 19. Trevino then signed the Plea Agreement on October 27, 2021. Dkt. No. 20 at 8. His rearraignment occurred on November 4, 2021. Dkt. No. 24.

The Government's investigation of its case and the exchange of discovery would have been required regardless of whether Trevino pleaded guilty or attempted to withdraw that plea. And the Government negotiated a plea deal sufficiently in advance of trial—at least a month if not more—to have avoided much of the earnest trial preparation required in the weeks immediately preceding an actual trial. While the Government argues that the prejudice now would be that it "would proceed to trial on all four counts . . . and have to prepare for and go to trial, which would likely last several days," this is no greater burden than would attend the Government preparing and trying any other drug trafficking case involving a single defendant who exercises his right to a trial.

But allowing Trevino to withdraw his plea at this juncture is not completely without harm to the Government. The Government has expended time negotiating in good faith with Trevino, preparing the Factual Resume and Plea Agreement, and attending the rearraignment. This represents time and effort that the Government's attorneys could have devoted to other cases—or preparing Trevino's case for trial—and is now lost.

The inconvenience to the Court and the waste of judicial resources is similarly not insignificant. The Court does not rubber stamp plea agreements. Rather, Plea Agreements and Factual Resumes are carefully examined to ensure that they support a conviction for the pleaded charge and support the parties' agreement. The Court takes great care to personally examine in open court each defendant wishing to plead to ensure that he understands his rights, understands the charge to which he is pleading guilty, understands the maximum penalties that his plea will expose him to, understands the provisions of his plea agreement, and understands the risk of not knowing at the time of his plea anything

17

more than the maximum range of his sentence—and not the actual sentence itself. In other words, the Court must ensure that a defendant's guilty plea is both knowing and voluntary. And the Court did so in this case.

Nor does the Court impose cookie-cutter sentences. A defendant's guilty plea sets in motion a laborious and conscientious court-driven process designed to arrive at the most appropriate sentence when taking into consideration the Guidelines, any appropriate departures from the Guidelines, the sentencing factors set out in 18 U.S.C. § 3553(a), and any variances from the Guidelines based the Section 3553(a) factors. This thorough process begins with the preparation by a Probation Officer of a pre-sentence investigation report ("PSR") and does not stop until the sentencing hearing at which the sentencing judge considers the PSR, objections made by any party to the PSR, any addendum to the PSR, and any evidence and argument received at sentencing. The PSR alone, a meticulously prepared document, requires a Probation Officer to conduct multiple lengthy interviews, obtain verified documents from several sources, and spend many hours synthesizing the results of that investigation into a comprehensive PSR and any addendum.

For all these reasons, and in consideration of the totality of the other factors, the undersigned FINDS that the combination of the second, fourth, and seventh *Carr* factors weighs against allowing Trevino to withdraw his plea.

3. The third *Carr* factor

The third *Carr* factor considers the defendant's delay in filing the motion to withdraw his plea. Here, Trevino waited until his sentencing on February 22, 2022, more than three months after pleading guilty, to advise the Court that he wanted to withdraw his

plea. He blames his attorney for this three-month delay, during which time Trevino claims that Blizzard "abandoned" him and had no communication with him between his plea and January 26, 2022. Nevertheless, if Trevino felt abandoned by his attorney during this three-month period, he did not notify the Court of either his abandonment or his desire to withdraw his plea.

A review of Fifth Circuit precedent regarding the third *Carr* factor reveals that even relatively short delays in filing a motion to withdraw a plea weigh against a defendant. *See, e.g.*, *Harrison*, 777 F.3d at 237 (weighing a five-week delay against defendant); *United States v. Conroy*, 567 F.3d 174, 179 (5th Cir. 2009) (weighing a six-week delay against defendant); *Carr*, 740 F.2d at 345 (weighing a 22-day delay against defendant)." *U.S. v. Landreneau*, 967 F.3d 443, 450-51 (5th Cir. 2020) (weighing a three-month delay between pleading guilty and moving to withdraw against defendant).

The Fifth Circuit in *Carr* instructed that "[t]the rationale for allowing a defendant to withdraw a guilty plea is to permit him to undo a plea that was unknowingly made at the time it was entered . . . not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty. 740 F.2d at 345 (citing *Everett v. United States*, 336 F.2d 979, 984 (D.C. Cir. 1964).

Here, Trevino made clear in the March 24 hearing that the primary impetus behind his desire to withdraw his plea was his realization, upon receiving the PSR, that his relevant conduct pushed his sentencing range higher than what he expected it to be. Trevino insists that his attorney told him prior to the PSR coming out that his Guideline range would be

121-151 months. When he received the PSR, Trevino was surprised to see that his Guideline range had increased to 210-262 months, assuming credit for acceptance of responsibility. During the March 24 hearing, Trevino acknowledged his understanding that if he loses credit for acceptance of responsibility for withdrawing or attempting to withdraw his plea, his Guideline range will further increase.

The undersigned examined Trevino at the March 24 hearing on whether Blizzard promised him the lower Guideline range, and he admitted that while Blizzard "informed" him of the lower range, "I can't say he promised me" a sentence in the lower range. Also during the March 24 hearing, Trevino acknowledged that he was cautioned during his rearraignment that no promises or assurances were being made to him by anyone that his sentence would be within a certain Guideline range, and that he was aware that he could be sentenced up to life in prison without being allowed to withdraw his plea.

Trevino's attempt to withdraw his plea appears to be precisely the type of tactical decision proscribed by *Carr*. Here, Trevino does not dispute that at the time of his plea he: (1) understood the essential elements of the charge he was pleading to, (2) agreed that he had committed those essential elements, (3) understood that he could be sentenced to imprisonment for up to life, (4) acknowledged that no one promised him a certain sentence or Guideline range, (5) understood that if his sentence was higher than he expected, as long as it was within the statutory sentencing range of between 10 years to life he would not be permitted to withdraw his plea, and (6) that understanding all of this, he still wanted to plead guilty and was doing so of his own free will.

Trevino also acknowledged during the March 24 hearing that at no time prior to receiving the PSR did he wish to withdraw his plea. It was only after he realized that his sentence would be higher than he expected—as he admits being cautioned during his rearraignment that it might be—that he claimed his plea was unknowing and involuntary, thus prompting him to seek withdrawal of his plea.

For these reasons, the undersigned FINDS that *Carr's* third factor—the defendant's delay in filing his motion to withdraw his plea—weighs against Trevino.

### 4. The fifth *Carr* factor

The fifth *Carr* factor assesses whether the close assistance of counsel was available to the defendant. Trevino claims that Blizzard led him to believe that he had worked out an agreement with the Government's attorney that would expose Trevino to a Guideline range of 121-151 months of imprisonment. Trevino believed that by having Counts One through Three dismissed, that those counts would not be used against him for purposes of sentencing. He claims that had Blizzard explained that the facts reflected in Counts One through Three could be used as relevant conduct at sentencing, he would not have pleaded guilty and would have gone to trial on all four counts.

Trevino claims that after he learned through the PSR of the higher Guideline range of 210-262 months, he started doing his own legal research and receiving legal research in the mail from an attorney friend. It was through this research that Trevino claims he learned about warrantless searches and came to a different legal conclusion than Blizzard regarding the merits of his potential suppression motions.

During the ex parte portion of the March 24 hearing, Blizzard described in detail from his notes the conversations he had with Trevino prior to his guilty plea and that related to potential suppression issues, the role of relevant conduct, and various calculations he had made regarding Trevino's potential total offense levels, criminal history categories, and Guideline ranges. The undersigned finds it unnecessary to go into the substance of the communications between Trevino and Blizzard. Rather, it is sufficient to find, as the undersigned does here, that at all times prior to and including Trevino's rearraignment, he had the close assistance of counsel. Moreover, it is equally clear that Blizzard negotiated a favorable plea agreement with the Government, which further confirms that Trevino had the close assistance of effective counsel.

And for these reasons, the undersigned FINDS that the fifth *Carr* factor weighs against Trevino.

5. The sixth *Carr* factor

The sixth *Carr* factor assesses whether the original plea was knowing and voluntary. As explained adequately above, while Trevino attempts to label his plea as unknowing and involuntary, there is no evidence—including in Trevino's March 24 hearing testimony—that his plea was either.

For this reason, the undersigned FINDS that the sixth *Carr* factor weighs against Trevino.

6. Recommendation regarding withdrawal of guilty plea

"To be valid, a guilty plea must be voluntary, knowing and intelligent." *U.S. v. Washington*, 480 F.3d 309, 315 (5th Cir. 2007). While Trevino claims that his plea was

"unintelligent and involuntary," the record reveals otherwise. Based on a careful evaluation of the record, a second examination of Trevino under oath, a thorough assessment of the *Carr* factors, and the totality of the circumstances relevant here, the undersigned FINDS that Trevino's guilty plea was fully informed, knowing, and voluntary. On this basis, the undersigned RECOMMENDS that the Court deny Trevino's request to withdraw his guilty plea.

b. Trevino's request for a new court-appointed attorney

As explained above, Trevino made his initial appearance in federal court on July 27, 2021, and asked the Court to appoint counsel for him. Finding that Trevino qualified for the appointment of counsel, the undersigned appointed Blizzard to represent him.

Although Trevino currently seeks the appointment of new counsel based on claims of ineffective assistance of counsel and conflicts of interest with Blizzard, Trevino testified at his rearraignment that he was fully satisfied with Blizzard's representation of him in this matter and that Blizzard had thoroughly explained to him each paragraph of his Plea Agreement and how it affected his rights before Trevino signed it. The undersigned accepted Trevino's rearraignment testimony as true at the time, and nothing that transpired during the ex parte portion of the March 24 hearing causes the undersigned to believe now that Trevino's rearraignment testimony was not truthful.

"[T]he right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006); *see also United States v. Mitchell*, 709 F.3d 436, 441 (5th Cir. 2013) ("The Sixth Amendment guarantees the right to counsel, but 'indigent defendants have no right to appointed counsel

of their choice.'") (quoting *United States v. Fields,* 483 F.3d 313, 350 (5th Cir. 2007)). Indigent defendants are "not entitled to demand a different appointed counsel in the absence of showing good cause," *United States v. Contreras*, 558 F. App'x 400, 401 (5th Cir. 2014); *see also United States v. Young*, 482 F.2d 993, 995 (5th Cir. 1973) (an indigent criminal defendant "does not have a right to be represented by a particular lawyer, or to demand a different appointed lawyer except for good cause."). And "[u]nless a Sixth Amendment violation is shown, whether to appoint a different lawyer for an indigent criminal defendant who expresses dissatisfaction with his court-appointed counsel is a matter committed to the sound discretion of the district court." *Young*, 482 F.2d at 995.

Courts are "constitutionally required to provide substitute counsel only if there is a substantial conflict or problem affecting the ability to represent the defendant—'a conflict of interest, a complete breakdown in communication or an irreconcilable conflict which led to an apparently unjust verdict.'" *Mitchell*, 709 F.3d at 441-42 (quoting *United States v. Romero–Trejo,* 476 F. App'x 790, 791 (5th Cir. 2012) (per curiam).

The appointment of new counsel is generally not required where counsel continues to communicate with a defendant and where the disagreements between the two relate mainly to counsel's trial strategy. *See, e.g., United States v. Romans*, 823 F.3d 299, 312-13 (5th Cir. 2016); *United States v. Hernandez*, 502 F. App'x 363, 367 (5th Cir. 2012). The Fifth Circuit Court of Appeals has instructed that "[a] defendant is not entitled to an attorney who agrees with the defendant's personal view of the prevailing law or the equities of the prosecutor's case." *United States v. Moore*, 706 F.2d 538, 540 (5th Cir. 1983). And while a defendant is entitled to an attorney who "will consider the defendant's views and

seek to accommodate all reasonable requests" regarding strategy and tactics, he "has no right to an attorney who will docilely do as he is told." *Id*.

Trevino's claims regarding Blizzard fall into two categories. First, he claims that Blizzard failed to inform him of several factors that ultimately affected Trevino's Guideline range, including that the relevant conduct from the three counts the Government agreed to dismiss—after sentencing—could be considered in computing his sentence, and how Trevino's two 2009 convictions would factor into his criminal history score. Second, Trevino claims that Blizzard failed to file various objections to the PSR and failed to file various pretrial motions, including motions to suppress and a motion for Trevino to withdraw his plea.

As for Trevino's claims that Blizzard failed to inform him of several factors that affected Trevino's Guideline range, based on the undersigned's discussions with Trevino and Blizzard during the ex parte portion of the March 24 hearing—and Trevino's testimony during that hearing and his rearraignment—the undersigned finds that there is no plausible factual support for these claims. Thus, these claims cannot provide good cause for the appointment of new counsel.

And as for Trevino's claims that Blizzard failed to file various PSR objections and pretrial motions, the Supreme Court has made clear that "[t]rial management is the lawyer's province: Counsel provides his or her assistance by making decisions such as 'what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence.'" *McCoy v. La.*, 138 S. Ct. 1500, 1508 (2018) (quoting *Gonzales v. United States*, 553 U.S. 242, 248 (2008) ("[n]umerous choices

25

affecting conduct of trial" do not require client consent, including "the objections to make, the witnesses to call, and the arguments to advance."). "Some decisions, however, are reserved for the client – notably, whether to plead guilty, waive the right to a jury trial, testify in one's own behalf, and forgo an appeal." *Id.* (citing *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Trevino's complaints that Blizzard failed to object to the PSR and file pretrial motions fall squarely within those decisions that are the province of defense counsel. And the undersigned finds no support for rebutting the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). And for this reason, the undesigned finds that Trevino has failed to show good cause for the appointment of new counsel in connection with this set of claims.

Trevino has failed to show a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict in his attorney-client relationship. Nor has he shown other good cause for the appointment of new counsel. Thus, he is not constitutionally entitled to the substitution of counsel. But the Court could still exercise its discretion to grant him new counsel regardless.

The circumstances presented by Trevino's claims against Blizzard has undoubtedly resulted in a strained relationship between Trevino and Blizzard that is less than ideal. In addition to Trevino's claims against Blizzard in connection to the matters currently under consideration by the Court, Trevino has apparently filed a formal bar grievance against Blizzard on the same bases. Dkt. No. 36-1. Thus, it reasonably appears that their relationship has been damaged by Trevino's allegations and the circumstances they reflect.

It is not a stretch to presume that both Trevino and Blizzard would welcome a substitution of counsel.

But the Sixth Amendment does not mandate that attorney-client relationships be ideal so long as they are effective. And to Blizzard's considerable credit, he represented at the March 24 hearing that he is willing and able to continue representing Trevino notwithstanding the claims against him. If the District Judge accepts the undersigned's recommendation to deny Trevino's request to withdraw his plea, the only remaining trial court proceeding is Trevino's sentencing. During the March 24 hearing, Trevino and Blizzard demonstrated an ability to continue communicating with one another. And it appears abundantly clear to the undersigned that Blizzard has provided effective counsel to Trevino up to this point, although it has not always been followed.

As for Trevino's bar grievance against Blizzard, Courts are not required to grant a defendant's request for a new attorney solely because the defendant files a formal grievance against his attorney, provided the Court takes steps to reasonably ensure that the attorney can continue providing effective representation. *United States v. Gentry*, 941 F.3d 767, 777 (5th Cir. 2019). Here, the undersigned held a hearing, received Trevino's testimony, and heard from Blizzard. And based on the totality of the circumstances, the undersigned has reasonably ensured, and now FINDS, that Blizzard is willing and able to provide effective representation to Trevino through sentencing.

For these reasons, the undersigned RECOMMENDS that Trevino's request for new counsel be denied.

## IV.  CONCLUSION

For the reasons explained in this Report and Recommendation, the undersigned RECOMMENDS that Trevino's request to withdraw his guilty plea be denied, that Trevino's request for new counsel be denied, and that the transcript of the March 24 hearing remain sealed until further order of the Court.

## V.  RIGHT TO OBJECT

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2017); Fed. R. Cr. P. 59(b)(2). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

ENTERED this 1st day of April, 2022.

_____

JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE